I'm Jeffrey Ehrlich for the appellant Mr. Yaghoubi, and I'm going to do my best to reserve five minutes. I think it would be useful to start with two areas where the parties are in agreement. First is that in California the scope of the type of replacement cost coverage that's at issue in this appeal is governed by statute. That's Cal Insurance Code Section 2051.5. And Travelers concedes that it cannot enforce a policy provision that would be less advantageous to its policyholder than the statute prescribes. The second area of agreement is that Travelers has conceded that Mr. Yaghoubi's overall claim is a valid one, in the sense that they don't say that he burned down his building. They've already paid him the actual cash value or the depreciated value. And so what's being litigated in this case is whether, in addition to that actual cash value, Mr. Yaghoubi's entitled to get the replacement cost benefit, which is really the difference between what it would cost to replace the warehouse that burned down minus what he's already recovered, the actual cash value. Travelers explained why it wouldn't pay the replacement cost benefit in an email to Mr. Yaghoubi's adjuster on September 13, 2013, which is in the record at 2ER48, and it said when pursuing replacement cost benefits through the purchase of a building away from the insured premises, that building must be used for the same purposes as the building that burned. And so the core issue in this appeal is whether that used-for-the-same-purpose language that Travelers relied on to deny the claim has its source in Section 2051.5. And Travelers concedes that the text of the statute doesn't include anything like that, but it contends that the limitation is inherent within the meaning of the word replace in the statute, and we disagree for four reasons. The first would be that if Travelers' position were correct, then you could take the relevant statutory language and you could interchange it with Travelers' definition, and the meaning wouldn't change a bit, and you can test it very easily. The relevant portion of Section 2051.5, Subdivision A, directs that, now I'm quoting, once the property is repaired, rebuilt, or replaced, the insurer shall pay the difference between the actual cash value payment made and the full replacement cost. So Travelers says you should take that language and read it to say once the property is repaired, rebuilt, or replaced, with property that is used for the same purpose as the destroyed property, the insurer shall pay the difference between the actual cash value payment made and the full replacement cost. And those are not equivalent statements. Because your position that they can't provide anything in the policy other than what the statute says? They cannot provide, they can deviate from the statute, Your Honor, but any deviation has to be only to the advantage of the policyholder, not to the detriment. So the statute provides a minimum that they can, if they want to, for market purposes, sell more advantageous coverage, they can do that, but they can't sell coverage that's less advantageous than what the statute provides. So as we've explained in detail in pages 32 to 34 of our opening brief, that under the California rules, for statutory construction. Counsel, under your view of this case, is there any limit that you recognize on what would constitute a reasonable replacement structure? I knew you were going to ask me that. I think it's a hard question in that the legislature simply used the word replace, rebuild, or repair. And as we went through, to rebuild is not relevant here, to rebuild, I'm sorry, repair isn't relevant. To rebuild it means to basically create a duplicate. Right. And then to replace means something different, inherently different, because you're not rebuilding it. And I don't think, it's clear the legislature didn't draw lines or delineate how different is acceptable. So I think you have to look at the meaning of the term replace, and as a matter of statutory construction, you would come up with what you think is the most reasonable version that the legislature had in mind. And so I don't have a hesitation to say that it would be unreasonable to say that if real property is at issue, that it should be replaced with other real property. That's not an unreasonable position. Okay, so warehouse versus apartment. Sure. Let's talk about what we have here, warehouse versus apartment. They're both real estate. Yes. Okay, I'm with you so far. Both commercial real estate that to the owner serve the same functional purpose. They both provide a stream of rental income, and they hopefully will appreciate. So is the Empire State Building. That's right. And if he could have afforded, I mean, the policy limit wouldn't really let you get the Empire State Building. But, you know, the legislature didn't draw any lines. And I think for good reason. They didn't say, I mean, there's a. So let's, I mean, you understand, I know you understand the position of travelers here. Travelers are saying, look, there has to be some limit on this, otherwise insurance are going to be incentivized to burn whatever, get rid of this non-income producing piece of property so they can get into something more lucrative. Your Honor, it's a policy argument. I understand. And first of all, the legislature, since you're construing a statute, the legislature didn't seem to concern itself too terribly with that particular policy argument. First of all, the statute doesn't say that to get replacement cost value, you have to first replace. The statute says that insurance companies, if they wish, can include that requirement. The Garns case that we equate makes that clear. Pay more for that. Sure. So the legislature didn't think as a matter of public policy that that moral hazard was so problematic that it needed to legislate the requirement. Second of all, if you look at, this case involves something called an open policy. And almost all insurance in California is sold open. An open policy is you buy the policy and there's no agreement at the time about what it's really worth. You just have a policy limit. But there's also a valued policy. And a valued policy, the parties agree at the time the property is insured of what the value is. And Section 2058 of the Insurance Code deals with replacement cost of a valued policy. And it says that if the policyholder doesn't repair or replace, you just get the policy proceeds. So what I'm saying is the legislature wasn't concerned with that moral hazard. And, therefore, I would have a harder time if Mr. Yagoubi had chosen to replace his warehouse with a comic book collection that he thought was going to appreciate. But I don't have to defend that position because he bought real estate. And where my office is in Claremont, there was an old warehouse called the packing house. It was a citrus packing house. It's been repurposed. Now it has restaurants, an art gallery, office space. Buildings, structures are repurposed all the time. And so to say that the legislature dictated that in order to get the replacement cost benefit, you have to replace with something whose tenants are using the property the same way is really, I don't think it's tenable. And it's not within the definition of replacement. Travelers says they're not limiting what you can build. They're just limiting the value of what you can get under the policy. I think that's right. Because the policy limit caps what you can build. Also, section 2051.5 subdivision C has a protection for insurance. Doesn't the nature of the structure that's being insured make any difference here? I don't think it does. The statute applies both to real property and even to personal property. Anything you replace for a replacement cost would be subject to 2051.5. I think it's worth noting that if you look at traveler's policy, which is laid out on page 17 of the red brief, this provision, this same use provision that they're really relying on so heavily for a public policy standpoint, it doesn't restrict what kind of property can be replaced. This provision is in the lost settlement conditions. And it says we will determine the value of covered property in the event of a covered loss or damage as follows. And then you read down the paragraph once. Is it replacement cost subject to these limitations below? And then you skip a bit. And then C, it says we will not pay more on a replacement cost basis than the lesser of these three itemized sections, which is the policy limit or the second, the cost to replace the damaged property with other property of comparable material used for the same purpose. And third is the amount actually spent. So the policy itself doesn't actually have this use for the same purpose that defines what a replacement is. Traveler's position is that you have to rely solely on the meaning of the word, the definition of the word replace, which in its briefs it's not even saying that replace, that one reasonable way to interpret the statute is the way it does. It says that's the only possible way, that replace inherently has this same use limitation. That's traveler's position. And that's not a reasonable position. Counsel, before you reserve, what was the actual cash value, the fair market value that travelers paid to your client for the warehouse? $491,000 was the actual cash value payment. And what was the policy limit that was available? Off the top of my head, I don't know the limit, Your Honor, but there's no dispute about the replacement cost benefit. It's $851,939. That's in the record at 2 ER 33 to 38. $851,000 is the replacement cost benefit. Benefit. Benefit. Right. Under the policy. Yes. And what was the, your client purchased an apartment? Yes. What did he pay for it? Again, I, within, I don't know. He couldn't recover more than the amount of this replacement cost benefit. Looks like your client's in the gallery. He is. But I'm hoping. And I, you know, we look at these records. If these numbers aren't in the records, in the record in the case, then obviously we can't consider it. They're in the record and they're in my opening brief. All right. Okay. So in any event, he paid more for the apartment complex than he received from travelers. And you're saying it was within the available policy limit. Yes. Travelers simply said you cannot replace an apartment building, use an apartment building to replace a warehouse. And that was the end of the story. And so it's not a matter of the numbers didn't work. I'm going to go a little into my reserved rebuttal time. So the amount they were willing to reimburse you was what? Nothing. Nothing. Because they said they won't recognize the apartment building as a replacement based on their definition of the word replacement. And I think I would say that if you look at the Conway versus Farmers decision that travelers really relies heavily on, Conway actually held that the word replace is ambiguous, that it has multiple reasonable meanings. So it wholly undercuts travelers' position that there's only one reasonable meaning as a matter of law and that that meaning implies the same use requirement. You know, when I walked into the courthouse, you have this lovely space in front of it that's a library. And today, most legal research isn't done in libraries. So if you had the inclination and enough clout with the GSA, you might have them replace that library with a daycare center, with a gym, whatever you wanted. It wouldn't violate the definition. You think that would be a replacement of the library? You would replace the library with something else, or you could replace it with a courtroom. I'm saying it wouldn't violate linguistically when I say that Mr. Yagubi replaced his warehouse after it was destroyed with an apartment building. That doesn't – it's not a non sequitur. It's not the same as if I were to say he replaced it with a melody. There's no category error here. They're sufficiently similar. Usually when you invoke GSA with judges, it does not bring about a good reaction. It sends a chill down our spines. Well, I'll reserve that. All right, fair enough. That's one thing we can all agree on. No dissents on that one. All right. Good morning, panel. Aaron Agnes for the appellee. One thing we didn't touch upon this morning, and then I'm going to go to some of the comments that were made by counsel, is the waiver issue. The waiver issue is pretty front and center in this matter. The first time there was any argument about Section 2051.5 invalidating a provision in the traveler's policy was in the opening brief filed before this court. The argument in the district court was what? The argument in the district court, well, that's tricky too because that changed a lot before the district court. The argument in the district court up until the summary judgment motion was filed was that they had not been able to repair or replace the property. It was impossible, and they should recover the replacement cost benefits anyways. Isn't this still a purely illegal issue? It's not purely a legal issue because there's been no discovery as to the purchase of the new apartment complex and the validity of that purchase and when he started to look for the purchase of that, when the escrow process started, whether during deposition testimony, the plaintiff and now appellant in this case testified to owning in the high 20s of properties. So there's no discovery done on whether or not the apartment complex was replacing the damaged covered property or something else that was going on because the first time it was ever alleged that the apartment complex was a replacement was in the MSJ opposition. And that's when attached to a declaration was one document purporting to show a closing of escrow statement or a buyer's statement. That was the first document ever provided that showed anything regarding the purchase of the property. It wasn't in the initial disclosures. It wasn't in any of the proceedings. But when you get to the waiver argument, obviously it's generally well established and known that you can't make your first argument at the time on appeal and that the argument by appellant is, well, this is purely law and not at all based on a factual record. What was the initial basis for the travelers denying the claim? Well, travelers paid the claim. Travelers paid the actual cash value. Travelers paid the loss of income for boarding up the property, for shoring and everything else. And then they said, you know, under the terms of the policy, if you... Wait, what? So you paid for what? For the actual cash value of $491,000 for the property, which is the market value of the property at the time of the total loss. They paid for boarding up and shoring the property because it was in a burnt state. They paid full 12 months for the loss of income and loss of rent. And none of that was disputed before the district court. But they paid an additional premium in order to get this replacement coverage. Correct. And so they got... Your position is they're entitled to nothing for that additional coverage because they didn't replace the warehouse with something of a similar nature. That's correct. And you're not... Are you contending that they had to rebuild at that site? No. No, and that's been well litigated already. And I'm jumping out of order now, but, you know, we keep going back to 2051.5 and the definition of replace. If you actually look at 2051.5, the statute repeatedly says, repair, rebuild, or replace the thing lost or injured, the damaged property, the covered property, the injured property. And so it's repairing, rebuilding, and replacing. We've kind of all agreed that Traveler's interpretation of replace is reasonable. In fact, other courts have interpreted it the same way. But you have repairing a property. If a wall or a roof is damaged, you repair it. Rebuilding a property, you put up the same structure. And replacing the covered property, the damaged property, would be putting up a functionally similar property to the one that's damaged, and that's the one that was insured. Do you agree with the appellant that you can't write a policy that is narrower than the statute? You can't write something that directly conflicts. But there's nothing in 2051.5 that says you can't put in use for the same purpose in the policy. So you would argue that the statute permits this? If you get past the waiver, which I think is one more point I want to raise, because there was something said in the reply brief that I didn't have a chance to address. But if you get past the waiver issue and you're on 2051.5, the very starting point is whether or not there's anything that contradicts in traverse policy that statute, and I don't think there is. Then number two is this discussion about how do you interpret replace? Is replace ambiguous? And one of the key things that was brought up just now at this hearing is, what's the other reasonable interpretation? You can't have an ambiguity without some other reasonable interpretation. And so there was a question of where does the scope end? Could it be anything? He says that it ends with the policy limits and that as long as it's you're doing something that's in, that is in real estate and rebuilding something or purchasing something, that that's okay. Well, why does it have to be real estate? Why couldn't you buy a bond that provides passive income? It's property. And why do you have the terms repair and rebuild if you could just do whatever you want? As long as you spend more than whatever the actual cash value is. It eviscerates the repair and even rebuild words and just allows for any purchase above what was already paid. And so that's one of the inherent issues that we've brought up in our briefing. And frankly, there was comment about how this is just traveler's interpretation. It's not just traveler's interpretation. It was supported by an appellate court decision in Texas who looked at this and appellate court decision in Indiana that looked at this. And the California court in Conway talked about a functional similarity. That's why you can buy another house because they're functionally similar. All right. So I think we're getting here to the key thing, which is this functional similarity. Why isn't a warehouse and an apartment building functionally similar in the sense that they're both real estate and they both provide passive income? Well, one is residential and one is commercial. That's the distinction you're drawing. Not the sole one, though. And the risks associated with them are very different. In apartments, you've got people living in there and coming in and out of it, whereas in a commercial warehouse, you have, in theory, storage of some kind of property or holding of property or whatever you might have, but you don't have the same liabilities associated with an apartment complex that you do with a commercial warehouse. And actually, now I'm blanking if it was Fitzhugh or Sieber, the two other cases, but one of them actually does a pretty good job of explaining not just the difference between residential and commercial, but the active liabilities that go on on having just a storage site, which is what travelers agree to insure for property and liability, versus having a 20-unit apartment complex. And so it's, from our standpoint, not functionally similar and there's no way replace can be read to just allow anything. Is there a policy that you're aware of from travelers where you could have them buy anything? I don't think so. I think that would go against the whole idea of what these cases stand for. So what you'll also see in these cases about replacement costs, and it was the value of your property as it existed at the time of the loss. And that's what was paid out $491,000. It's not in dispute that that was the value. This idea of replacement costs was allowed if your property had depreciated, but it was going to cost more to put your property back to the way it was. This is all looking at your damaged property and putting you back to where you were. And if it depreciated in value, you could pay for this extra coverage to allow you to rebuild it when the value right now might not be worth the same. But it doesn't mean you can just go out and buy the Empire State Building, which I heard in theory was a suitable replacement, or Staples Center, and rent it out to the Lakers. You don't think that the statute permits that either? I do not think the statute permits that. And do you think that the language in your policy that requires that it be used for the same purpose, that that has any meaning? What does it add to the statute? I think it just goes with the statute, frankly. I think you can get to the same place by just looking at repair, rebuild, replace the covered property. I think already inherent in the definition of replace and the use of these three terms with respect to the property that's being insured already imposes a functional similarity. And the Chalmers policy just adds that, which the other policies do that exist in here. One thing that was said was about value policies and how that would be different. That was something that was thrown into the reply brief. One quick thing about value policies, since we didn't have a chance to brief it, but if you go to the Rudder Practice Guide on Insurance Litigation, and it's in Chapter 6B-G, it says, valued policies are seldom written in California because they are subject to the quote, moral hazard, end quote, of overvaluation. So value policies aren't even generally used in California because of the moral hazard issue, which is something that I won't reiterate to death because it's in the appellate brief since it's already been brought up by Judge Christensen. But, you know, there is a moral hazard associated with allowing any kind of replacement for anything. You don't need to take the same measures to protect the property, or it could be going as far as actual arson. Your type of line of business is no longer making any money. Go find a new line of business. You can buy whatever you want. You know, you can exceed whatever the actual cash value of your existing property is to go start any kind of new venture. And that's not what the policy covers. That's not what the statute allows. And then the last thing on the waiver issue is the main case cited by the appellant to say, I know we just brought this up. I know arguments brought up in the appellate court are normally waived, is a case called Dream Palace. And it was a Ninth Circuit decision. And in Dream Palace it talked about how there could be an exception if it was a purely law, no factual issues, no prejudice situation. And in that case, Dream Palace was suing over a local ordinance imposed by the county about whether it was constitutional under the First Amendment. It was a constitutional question case. Is it constitutional, this ordinance that's being imposed and these regulations that are being imposed? And the appellate court in that case said, you know what, that's purely legal. It's not factual. It's not based on any factual record. We disagree that this one's purely legal. But something that's left out of the reply brief is in Dream Palace, even after that hurdle of what the exception is, the Ninth Circuit went on to say, and we need to look at the particular circumstances of this case to determine if it even warrants review. So first it's did it fall within this exception of purely legal and no factual record, and which we think already has not been met because there was no factual record as to the purchase of this apartment complex. This just all was sprung at the last second and nothing's been developed on that issue. But second, it's what are the particular circumstances? Do they warrant it here? And to put this in other words, we don't know that they spent more for the apartment building than they would have spent to replace the warehouse. Well, yes. And when they bought it, when they started the process of buying it, did they start looking at this apartment complex long before the loss even happened? Did they have, if there were 25 to 30 other properties owned, was there another property that was replaced with this one? And so none of that's been developed because it just appeared in the MSJ opposition a copy of this one page. Okay. Let's go to the next issue back to functional similarity. We understand your waiver argument. In your view, is it, would it have been, I mean, do we need to have a situation here where a warehouse is destroyed, insured needs to replace it with another warehouse? Is that Travers's view? Generally speaking, yes. That was the insured function of the property. And in terms of replacing it with another warehouse, is it Travers's view that it needs to be comparable fair market value? Or let's say there isn't another warehouse quite like this one. The one the insured wants to get is bigger and more expensive. Is that okay? That's okay. And the law, I think, already is on that point about it being okay about the size. So it's not tied then in Travers's view to fair market value. It doesn't need to be the same plus or minus fair market value. That's correct. And, in fact, so when the claim was happening, and Travers has already paid out everything and it's not in dispute other than could there be replacement costs, the first ones submitted to Travers was an apartment complex in an inquisitory fashion. A, hey, would this apartment complex count as a replacement? Travers says no, never hears another thing about it. Their own public adjuster, it's in the excerpts of record, says I didn't even think that was going to be a replacement either. And so, but after that happens, there's four other properties that are submitted to Travers saying, hey, look, if we buy this one, will it count as a replacement? None of those were rejected. So there were multiple opportunities. Travers provided the fire was in December 2012, and I think the last extension that Travers gave for buying the replacement property was like March 2017. So if any of those other properties are bought and it exceeded the fair market value, it would have been paid. All right. So unless the panel has any other questions, I don't have anything else to add. Thank you. Thank you, counsel. I have three points I'd like to cover. First, when counsel said that as long as their policy is not in direct conflict with the statute, it's okay, that is a misstatement of law. If you look at the blue brief on page 20, we cite the Century National case. It's a California Supreme Court case that says you can't conflict with the statute, and additionally, you can't include terms that even if they don't directly conflict, operate in a way that makes the scope of the coverage less advantageous. So you can't have coverage that's not as good. Second point I have to make is counsel went on and said a warehouse is a lower risk than an apartment building because apartment buildings have people and all of that. So I think the issue is whether the insurance underwriting is a legal issue. The question here is not an underwriting risk standpoint. Travelers didn't have to insure the replacement property. Mr. Yagoobi didn't have to buy another policy with travelers. The issue is simply whether he could replace one property, real estate, with another piece of real estate. You don't have to get into the insurance underwriting. With respect to waiver, I think it is a legal issue. It's a question of statutory interpretation. And I think the Court should exercise its discretion to construe the statute because in the insurance standpoint, the carrier has an obligation of good faith and fair dealing even after litigation has commenced to comply with the statute, to adjust the claim in conformity with the statute. And what Travelers is saying is because Mr. Yagoobi didn't raise the statute to it, that it's somehow you shouldn't look at the statute and it's not responsible for what the statute says. I don't think that's a reasonable position. I think we've covered the rest in the briefing. In two seconds, my red light's going to be on. So thank you. Thank you very much, counsel, both of you, for your arguments in this case, this matter submitted. I will just say I think GSA will say after this case, well, at least we're not the Lakers. I think the Lakers were also mentioned in this argument here.
judges: Schroeder, Owens, Christensen